UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER BURNS,

                     Plaintiff,

      -against-                                   1:12-CV-1432 (LEK/CFH)

JAMIE FUMAROLA,

                     Defendant.

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff Christopher Burns ("Plaintiff") alleges violations of his constitutional rights by Defendant Jamie Fumarola ("Defendant") pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Complaint"). Presently before the Court is Defendant's Motion for summary judgment. Dkt. No. 16 ("Motion"). For the following reasons, Defendant's Motion is denied.

**II.    BACKGROUND**

This action arises from an incident at the Ulster County Family Court on June 9, 2010. Dkt. Nos. 16-11 ("Statement of Material Facts") ¶ 1; 18 ("Statement of Material Facts Response") ¶ 1. During a break in a custody proceeding, Plaintiff, an attorney, began to "chastise" and "reprimand" Valerie Wacks ("Wacks"), the appointed representative of the child, because Plaintiff felt that Wacks was not "doing her job." SMF ¶ 3; SMF Resp. ¶ 3.

Defendant, a court officer for the New York Unified Court System, took notice of Plaintiff's actions. SMF ¶ 5; SMF Resp. ¶ 5. According to Defendant, Plaintiff was "getting in [Wacks's] face in an "aggressive," "mad," and "angry" fashion while "berating" her in a "loud nasty tone." SMF ¶ 6. Defendant claims that Plaintiff was only two or three feet away from Wacks, and Plaintiff

was leaning in towards Wacks while yelling at her.  SMF ¶ 7.

Plaintiff disputes these contentions, asserting that he was "speaking to Wacks in a normal tone of voice, did not use any insulting words[,] and remained seated during the entire thirty seconds to a minute that he was speaking to Wacks."  SMF Resp. ¶¶ 5, 17-18.  Plaintiff contends that he was merely "speaking to Wacks as a lawyer protecting his client."[1]  Id. ¶¶ 5, 19.  Plaintiff also claims that he was seated five feet away from Wacks, not two or three.  Id. ¶ 7.

The only people present in the courtroom were Defendant, Plaintiff, a third attorney, and Barbara Ghebreselassie ("Ghebreselassie"), a Court Appointed Special Advocates' ("CASA") volunteer.  SMF ¶ 5; SMF Resp. ¶ 5.  The parties also agree that Wacks "meekly ignor[ed]" Plaintiff's comments "by looking away, diverting her attention, and being generally unresponsive."  SMF ¶ 9; SMF Resp. ¶ 9.

As Plaintiff continued his pointed remarks toward Wacks, Defendant approached Plaintiff and asked him not to speak to Wacks "in that way."  SMF ¶¶ 10, 15; SMF Resp. ¶¶ 10, 15.  According to Defendant, Plaintiff "refused in a negative tone, stating in words or substance 'I can talk to whoever I want, however I want, whenever I want.'"  SMF ¶ 11.  Plaintiff further stated "quite frankly I don't care if you like my tone[,] I'm working over here, I'm doing my job."  SMF ¶ 12; SMF Resp. ¶ 12.  Defendant reminded Plaintiff that she "was the officer in the part" and warned Plaintiff that "if his behavior did not end," she would place him under arrest.  SMF ¶ 13; SMF Resp. ¶ 13.  Plaintiff responded: "You can't arrest me, I didn't threaten you."  SMF ¶ 14; SMF Resp. ¶ 14.  Defendant claims that Plaintiff made this remark in a "loud and mad fashion," a

---

[1] The lawyers were present for an emergency custody proceeding, in which Plaintiff was representing the mother of the child.  Compl. ¶ 7.

2

characterization which Plaintiff disputes. SMF ¶ 14; SMF Resp. ¶ 14.

On the belief that Plaintiff's actions were disturbing "members of the public," Defendant proceeded to arrest Plaintiff and sign a sworn information/complaint charging Plaintiff with disorderly conduct. SMF ¶ 22; SMF Resp. ¶ 22. In the accusatory instrument, Defendant stated her basis for arresting Plaintiff as: "[Plaintiff] was addressing persons in a threatening manner and speaking in aggressive tones toward other persons in a way that [was disturbing] the other patrons of family court, subject refuse[d] to discontinue the [behavior] despite [several] requests and threat of arrest by [Defendant] to do so." SMF ¶ 23; SMF Resp. ¶ 23. After Defendant signed the accusatory instrument, the Ulster County District Attorney's Office took over the prosecution; Defendant testified at Plaintiff's subsequent trial but was not otherwise involved. SMF ¶ 24; SMF Resp. ¶ 24. The matter later proceeded to a bench trial in Kingston City Court, where Plaintiff was acquitted of disorderly conduct. SMF ¶¶ 28-29; SMF Resp. ¶¶ 28-29.

On September 18, 2012, Plaintiff commenced this action against Defendant, alleging false arrest, malicious prosecution, and violation of his First Amendment rights, pursuant to 42 U.S.C. § 1983. See generally Compl. Defendant subsequently moved for summary judgment on all claims. See generally Mot.

### III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). "The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the 'threshold inquiry of whether there is the need for a trial.'" Feder v. Target Stores, No. 11-CV-3675, 2014 WL 1651955, at *2 (E.D.N.Y. Apr. 24, 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

**IV.     DISCUSSION**

   **A. False Arrest**

"In the context of § 1983 false arrest claims, federal courts look to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); see also id. (gathering cases). Under New York law, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks and citation omitted). Defendant argues that (1) she had probable cause to arrest Plaintiff for disorderly conduct, and (2) in the alternative, she had arguable probable cause, which entitles her to qualified immunity. Dkt. No. 16-10 ("Defendant's Memorandum") at 6-15.

   *1. Probable Cause*

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). A finding of probable cause is made based on the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230 (1983). Courts may determine whether or not probable cause existed, as a matter of law, if there is no disagreement as to the pertinent events and the knowledge of the officers. Weyant, 101 F.3d at 852.

Under New York law, a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he does any of the following: (1) fights or engages in violent, tumultuous or threatening behavior; (2) makes unreasonable noise; (3) in a public place, uses abusive or obscene language, or makes an obscene gesture; (4) without lawful authority, disturbs any lawful assembly or meeting of persons; (5) obstructs vehicular or pedestrian traffic; (6) congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or (7) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. N.Y. PENAL LAW § 240.20; Milfort v. Prevete, 922 F. Supp. 2d 398, 405 (E.D.N.Y. 2013).

Defendant argues that she had probable cause to arrest Plaintiff for disorderly conduct because his behavior was "aggressive," and his "mad/angry" and "loud nasty tone" was bothering members of the public, especially Wacks and Ghebreselassie. Def.'s Mem. at 7-9. Although Wacks remained generally unresponsive, Ghebreselassie stated that she was "completely alarmed" by Plaintiff's behavior, which she characterized as "verbally hostile," "very loud," "very angry," and "offensive and denigrating." SMF ¶¶ 17-18; SMF Resp. ¶¶ 17-18. Finally, Plaintiff made clear that he was not going to comply with Defendant's directive to cease speaking to Wacks "in that way." Id. Defendant argues that, based on the totality of these circumstances, she had probable cause to believe that Plaintiff intended to "cause public inconvenience, annoyance, or alarm" by engaging in "tumultuous" or "threatening" behavior. Id.[2]

---

[2] Defendant does not provide any case law to support her argument that probable cause existed to arrest Plaintiff for disorderly conduct. Def.'s Mem. at 10-11. Rather, Defendant relies on the doctrine of collateral estoppel; specifically, Defendant argues that Plaintiff cannot relitigate the issue of probable cause because the state judge's preliminary assessment of the accusatory instrument found Defendant to have "reasonable cause" to arrest Plaintiff for disorderly conduct. Id.

6

Plaintiff responds that Defendant did not have probable cause to arrest him for disorderly conduct, in that the incident took place in a locked courtroom with only the attorneys, Defendant, and Ghebreselassie present; Plaintiff remained seated at all times and did not use abusive, obscene, or insulting language; and while Plaintiff does not appear to contest that he spoke to Wacks in a stern manner, he maintains that he was merely advocating on behalf of his client in the context of an emergency custody proceeding. See Pl.'s Mem. at 14.

It is clear that the parties offer starkly contrasting versions of the events leading up to Plaintiff's eventual arrest. Indeed, Defendant states that "[Plaintiff] remembers this exchange differently." Def.'s Mem. at 7. By Defendant's account, Plaintiff acted in an aggressive, unreasonable, and threatening manner that violated proper courtroom behavior and caused a disturbance to members of the public. Id. at 6-9, 12-15. In contrast, Plaintiff states that the events took place behind closed doors, with only lawyers and authorized courtroom personnel present, and that he maintained a professional demeanor at all times. Pl.'s Mem. at 14. Plaintiff further asserts that Defendant acted unreasonably in repeatedly interrupting Plaintiff, and eventually arresting him, for merely performing his responsibilities as counsel to his client. Id.

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852. Here, the parties undeniably dispute the pertinent events leading up to Plaintiff's arrest.

---

However, because Plaintiff was subsequently acquitted of the charges, he was unable to appeal the prior determination. Dkt. No. 20 ("Plaintiff's Memorandum") at 21-22. Accordingly, Plaintiff is not estopped from relitigating the issue. See Johnson v. Watkins, 101 F.3d 792, 793 (2d Cir. 1996) ("Central to a full opportunity to litigate is whether appellate review of an adverse holding was available. If not, full and fair litigation was absent and collateral estoppel does not apply. Since here plaintiff had no opportunity to appeal the finding of probable cause, the doctrine of collateral estoppel does not bar suit.").

See Searles v. Pompilio, 652 F. Supp. 2d 432, 439 (S.D.N.Y. 2009) (finding material issues of fact on issue of probable cause in false arrest claim where plaintiff and court officer provided differing accounts of incident leading up to plaintiff's arrest). Moreover, "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994). Accordingly, there is a genuine dispute of material fact, and the Court cannot determine as a matter of law that Defendant had probable cause to arrest Plaintiff for disorderly conduct.

### 2. Qualified Immunity

A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). In the context of a motion for summary judgment, the relevant standard is whether "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987).[3]

Defendant argues that she is immune from Plaintiff's claim of false arrest because "a reasonable officer could have concluded that he or she was witnessing an individual engaging in disorderly conduct through the verbally hostile berating, chastising and reprimanding of a fellow

---

[3] This standard is commonly referred to as "arguable" probable cause, which exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir.1997).

8

attorney in an aggressive, loud, nasty, denigrating and offensive fashion, and, despite several warnings to stop, refusing to do so, but, instead, responding with a disrespectful statement challenging [the] officer's authority to keep order in the courtroom." Def.'s Mem. at 14. Plaintiff responds that Defendant is not entitled to qualified immunity because, viewing the facts in the light most favorably to Plaintiff, a rational jury could find that "no reasonably competent officer would have acted in the same way" as Defendant. Pl.'s Mem. at 21.

The Court agrees with Plaintiff. By Plaintiff's version of the events leading up to his arrest, he was merely addressing a fellow attorney during recess, in a locked courtroom, with only attorneys and authorized court personnel present, and he maintained a professional and appropriate demeanor at all times. A rational fact finder could determine that, based on Plaintiff's account, no reasonable officer would have concluded that probable cause existed to arrest Plaintiff for disorderly conduct. See Jenkins, 478 F.3d at 87 ("The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed."); see also Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004). Therefore, Defendant is not entitled to qualified immunity on Plaintiff's false arrest claim.

**B. Malicious Prosecution**

Section 1983 provides a federal cause of action for malicious prosecution against state officials, but courts look to state law for the elements of the claims. Cook v. Sheldon, 41 F.3d 73, 79-80 (2d Cir. 1994). "To state a claim under New York law for . . . malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable

cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). A showing of probable cause provides a complete defense to a claim of malicious prosecution. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002).

Defendant concedes that she commenced a criminal proceeding against Plaintiff by filing the accusatory instrument. Def.'s Mem. at 15. Defendant also does not contest that the proceeding was terminated in Plaintiff's favor, as Plaintiff was later acquitted of the disorderly conduct charge. Id. at 16. However, Defendant argues that she had probable cause to commence the proceeding, and that Plaintiff has not shown that the proceeding was instituted with malice. Id. at 15-16.

### 1. Probable Cause for Proceeding

Defendant argues that, since she filed the accusatory instrument against Plaintiff immediately after she arrested him, the probable cause analysis is the same for both the arrest and the prosecution. Def.'s Mem. at 5, 15-16. The Court agrees that this is the appropriate standard for determining the existence of probable cause to prosecute. See Posr v. Dolan, No. 02-CV-0659, 2003 WL 22203738, at *3, (S.D.N.Y. Sept. 23, 2003) (finding probable cause analysis identical where accusatory instrument filed concurrently with arrest). However, as stated *supra*, there exists a genuine dispute of material fact as to whether Defendant had probable cause to arrest Plaintiff for disorderly conduct. Accordingly, the same dispute of material fact precludes a finding that, as a matter of law, Defendant had probable cause to commence prosecution of Plaintiff.

### 2. Malice

Under New York law, "malice" does not necessarily require a showing of spite, hatred, malevolence, or corrupt design. See Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). "Rather,

10

it means that the 'defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Id. (quoting Nardelli v. Stamberg, 377 N.E.2d 975, 976 (N.Y. 1978)).

Defendant argues that Plaintiff has failed to plead any facts suggesting a "wrong or improper motive." Def.'s Mem. at 16-17. Defendant asserts that she only arrested Plaintiff after giving him several warnings, and her decision to arrest was a "last resort" after Plaintiff refused to cooperate. Id. Therefore, Defendant argues, Plaintiff has not alleged that Defendant was "motivated by any other reason other than she felt she was upholding her obligation to maintain order in the court." Id. at 16. Plaintiff responds that Defendant only commenced the proceeding "in order to conceal her true retaliatory motive: to punish [Plaintiff] for his refusing to obey [Defendant's] unlawful directive to change the allegedly 'offensive' or 'denigrating' way he was speaking to Wacks." Pl.'s Mem. at 20.

The Court agrees with Defendant that Plaintiff has not pled any facts suggesting an improper motive by Defendant; Plaintiff's proposed "retaliatory motive" is wholly conclusory and unsupported by any facts in the record. However, as Plaintiff correctly points out, Plaintiff does not have to identify a separate, improper motive because a jury can infer malice where probable cause is absent or in dispute. Pl.'s Mem. at 20; see also Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("[A] jury could infer malice from a lack of probable cause, which is sufficiently in dispute to survive summary judgment."); Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir.1996) ("In most cases, the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilty of the accused, and malice may be inferred from the lack of probable cause.") (citation and internal quotation marks omitted). As stated *supra*,

11

because a rational jury could find that Defendant lacked probable cause to arrest and prosecute Plaintiff, malice may therefore be inferred. See Sassower v. City of White Plains, Cnty. of Westchester, No. 89 CIV. 1267, 1995 WL 222206, at *5 (S.D.N.Y. Apr. 13, 1995) (denying defendant's motion for summary judgment on malicious prosecution claim where "a jury could find an absence of probable cause"). Therefore, a triable issue of fact exists as to whether Defendant commenced the proceeding with malice. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's malicious prosecution claim.

### C. First Amendment Claim

"In determining whether the First Amendment protects particular speech on government property, [a court] must first examine the nature of the forum in which the speaker's speech is restricted." Huminski v. Corsones, 396 F.3d 53, 89 (2d Cir. 2005). A courthouse is considered a "nonpublic forum," and "governmental restrictions on expressive conduct or speech are constitutional so long as they are (1) reasonable in light of the use to which the forum is dedicated and '. . . (2) not an effort to suppress expression merely because public officials oppose the speaker's view.'" Id. (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 800 (1985); see also Hotel Emps. & Restaurant Emps. Union v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 546 (2d Cir. 2002) ("The government may restrict speech in non-public fora subject only to the requirements of reasonableness and viewpoint neutrality."). There is no contention that Defendant arrested Plaintiff based on his viewpoint. See Def.'s Mem. at 20-21 (arguing that Defendant did not arrest Plaintiff based on the content of his speech to Wacks or to Defendant, but rather the *manner* in which he spoke) (emphasis in original); see also Pl.'s Mem. at 23-4. Thus, the only question is whether Defendant's restriction on Plaintiff's speech was

reasonable.

Reasonableness "must be assessed in light of the purpose of the forum and all the surrounding circumstances." Cornelius, 473 U.S. at 809. "The [purpose] of a courthouse and its courtrooms is principally to facilitate the smooth operation of a government's judicial functions." Huminski v. Corsones, 396 F.3d 53, 91 (2d Cir. 2005).

Defendant argues that, as a court officer, she is charged with maintaining order and proper decorum in the court, and therefore, she must be able to set reasonable limitations on behavior of "litigants appearing before the court." Def.'s Mem. at 20. In support, Defendant argues that Plaintiff's behavior failed to comport with the New York Rules of Professional Conduct, 22 N.Y.C.R.R. Part 1200 and Appendix A, including such provisions as "[l]awyers should be courteous and civil in all professional dealings with other persons" and that lawyers have a duty to "avoid . . . acrimony toward other counsel." Def.'s Mem. at 21. Defendant asserts that Plaintiff's failure to comply with these well-established rules for proper courtroom behavior establishes that Defendant was reasonable in her response to Plaintiff's actions. Id. at 21-22.

Plaintiff agrees that his behavior must comport with the Rules of Professional Conduct. Pl.'s Mem. at 23. However, Plaintiff contends that, viewing his account of the events most favorably, his behavior did comply with the rules; as such, there is a triable issue of fact as to whether Defendant's actions were reasonable under the circumstances. Id. Specifically, Plaintiff argues that, according to his testimony, at the time the verbal exchange ensued, the courtroom was locked, with only the attorneys and two authorized court personnel present, and that at all times Plaintiff maintained a professional demeanor. Id. Thus, because Plaintiff was acting well within the bounds of proper courtroom decorum, he argues that it was unreasonable for Defendant to restrict

his protected speech by arresting him. See id.

The Court agrees. Defendant has failed to show that there is no triable issue of fact as to whether Defendant's actions were reasonable under the circumstances. Defendant concedes that Wacks, the recipient of Plaintiff's comments, was generally unresponsive to Plaintiff's remarks. Moreover, contrary to Defendant's assertion that she must be able to set reasonable limitations on behavior of "litigants appearing before the court," Defendant does not contest that the incident occurred during a break in the proceeding, in a locked courtroom, without the judge present, and only the attorneys and two other authorized personnel present. Thus, Defendant has failed to show that, despite her disapproval of Plaintiff's actions, Plaintiff's behavior inhibited the "smooth operation" of the courtroom. See Huminski, 396 F.3d at 91. Accordingly, the Court cannot conclude as a matter of law that Defendant acted reasonably in restricting Plaintiff's protected speech, and Defendant is therefore not entitled to summary judgment on Plaintiff's First Amendment claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 16) for summary judgment is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 10, 2014
           Albany, NY

Lawrence E. Kahn
U.S. District Judge